Isadore Kosminsky v. B. T. Estes, Administrator, et al.

Decided October 22, 1901.

1.—Administration—Presumption—Closing Estate.

The closing of administration on an estate will not be presumed from lapse of time.

2.—Will—Construction—Legacies—"Winding Up" Estate—Partition.

Where one item of a will provided that the testator bequeathed to a nephew $250 a year out of his estate "to be paid by my executors until my estate is wound up," this did not necessarily mean until the estate was legally closed, where there was afterwards a partition and distribution of the estate and the property in the executor's hands thereafter and until the estate was legally closed was insufficient to meet a prior bequest to a minor son, and by the judgment of partition was recognized as belonging to the son,—the partition proceedings being a winding up of the estate within the intent and terms of the will as regarded the further payment of the annual legacy to the nephew.

Appeal from Bowie. Tried below before Hon. J. M. Talbot.

*Chas. S. Todd,* for appellant.

*Glass, Estes & King* and *P. A. Turner,* for appellees.

TEMPLETON, Associate Justice.—On May 20, 1886, Joseph Kosminsky executed a will, by which he undertook to dispose of the community estate of himself and wife, which was of the value of about $40,000. The fourth item of the will reads as follows: "I give, bequeath, and demise to my beloved son, Isaac Kosminsky, ten thousand dollars cash, with the interest on same until he is of age, out of my estate." The son was then, and is still a minor. Item fifth of the will reads thus: "I give and bequeath to my nephew, Isadore Kosminsky, out of my estate, the sum of two hundred and fifty dollars per annum, to be paid by my executors until my estate is wound up." The nephew was then a minor, and so remained until August 14, 1895. Joseph Kosminsky died on August 11, 1887, and the aforesaid will was duly probated. J. Deutschman and W. A. Kelsey, who were named in said will as executors, were promptly appointed, and qualified. The executors paid the debts of the estate, and a legacy of $2000 to the brothers and sisters of the decedent, according to the directions of the will. They also

made the first annual payment of $250 to Isadore Kosminsky. These payments left property of the value of $36,773.16 in the hands of the executors, in excess of the charges of administration. Mrs. Kosminsky, to whom large bequests were made in the will, coupled with certain conditions, declined to accept under the will, and, the time for such action having arrived, filed a petition for the partition and distribution of the estate. She claimed one-half of the estate as her community interest therein. She also alleged the birth of a daughter of herself and Joseph Kosminsky subsequent to the making of the will. All parties interested were duly made parties to this proceeding, and on July 30, 1889, a decree of partition was entered. The court found that all the property in the hands of the executors was community property of Joseph Kosminsky and Etta Kosminsky, and that the latter was entitled to one-half thereof; that the daughter, Bertha Kosminsky, born after the execution of the will, was entitled to one-fourth of the estate, and that the son, Isaac Kosminsky, was entitled, by the terms of the will, to the sum of $10,000, but that, as the remaining one-fourth of the estate was worth less than that sum, his claim and interest should be reduced to the remaining one-fourth of the estate. The decree continued as follows: "It is therefore considered, adjudged, and ordered by the court that said property be partitioned and allotted in severalty to said parties as follows, to wit: To Etta Kosminsky, one-half thereof; to Bertha Kosminsky, one-fourth thereof, as provided by law; and that the remainder of said property remain in the hands of the executors to be disposed of according to the directions of the will of said decedent." Commissioners were appointed to make partition, and their report, showing a partition in accordance with the terms of the decree, was approved. Mrs. Kosminsky and Bertha Kosminsky, through her guardian, received their portions of the estate. The remaining one-fourth of the estate, which was of the value of $9193.29, was thereafter held and managed by the executors for the use and benefit of Isaac Kosminsky until about 1898, when it was delivered to his guardian, he having been without a guardian of his estate up to that time. In 1894 the executors made application to sell certain real estate, which constituted the bulk of the property in their hands. The application appears to have been granted, as a report of sale was made and approved. In 1897 parties claiming to have a large judgment against the estate of Joseph Kosminsky filed a petition in the court where the administration was pending, whereby they sought to enforce the collection of their claim. It seems that said judgment was rendered in the Federal court against the sureties on a certain bond, among whom were Joseph Kosminsky and A. L. Ghio. It further appears that Ghio satisfied the judgment, and that in 1898, Mrs. Kosminsky, for herself and as guardian of her children, Isaac and Bertha, paid Ghio the sum of $1250 in discharge of the claim against them. No other proceedings were had in the matter of the administration of Joseph Kosminsky's estate, and the executors never filed a formal final account or sought a discharge. Deutschman, one of the

executors, died in 1898, and B. T. Estes was appointed administrator of his estate. Isadore Kosminsky never received anything from the estate except the sum of $250 to cover the first annual payment of the legacy to him, and in 1899 he brought this suit against the executors of Joseph Kosminsky's estate and their bondsmen for the recovery of the subse-quently accrued annuity to which he claimed to be entitled. He has prosecuted this appeal from a judgment rendered in favor of the defendants in said suit.

As stated above, the will provides for the payment to appellant, annually, of the sum of $250, until the estate should be "wound up." It is contended by appellant that this clause must be construed to mean that the payments should continue until the estate was legally closed. It may be conceded that the estate was not legally closed by the said partition thereof, as no final account was presented and approved, and the executors were not discharged. It is also true that a closing of the estate will not be presumed from lapse of time. We are unable, however, to concur in the contention that the words "until my estate is wound up," as used in the will, necessarily mean until the estate should be legally closed. The words do not have any such specific legal significance, and we can not say that, regardless of the intentions of the testator as disclosed by a consideration of the entire will, any such fixed and definite meaning must be attached to them.

Another contention of the appellant is that the terms of the will evidences the intention of the testator that the annual payments to appellant should continue until the estate was legally closed. The language of the will indicates that it was the expectation of the testator that it might be necessary, and for the best interest of all parties concerned, that the administration of the estate by the executors should continue for some years, and possibly until the minor son, Isaac, had arrived at maturity. The will, however, contains no express direction to that effect, and the expectation of a continued administration was manifestly coupled with, if not entirely based upon, the anticipation that the estate would prove adequate to meet the charges against it in the way of debts and legacies; that the wife would accept the provision made for her in lieu of her community interest, and that the birth of a posthumous child would not interfere with the distribution of the estate as directed by the will. When the wife declined to take under the will, and the daughter Bertha was born, and the partition was had whereby three-fourths of the estate devised was taken out of administration and delivered to the wife and daughter, the property belonging to the estate became and was insufficient to pay the unconditional legacy to the son. These events and proceedings defeated the chief, if not the only purposes of the testator in making the will, and removed whatever reasons he may have had for desiring an extended administration of his estate. By retaining the property left in their hands after the partition and distribution, and continuing the administration, the executors could do no more than ex-

ercise the office of guardian, as they had been shorn of their powers to carry out the intentions of the testator. All real necessity for further administration had ceased, and the only ground, even for the temporary continuance thereof, was to hold the property until it could be turned over to the guardian of the estate of Isaac Kosminsky. The judgment of partition distinctly and affirmatively recognized the right of Isaac Kosminsky to the one-fourth of the estate left in the hands of the executors, and the only reason apparent why the same was not directly set apart and turned over to him was because he was then a minor, and had no guardian of his estate. It certainly can not have been the intention of Joseph Kosminsky to have the administration of his estate extended for the sole purpose of continuing a legacy to his nephew. Especially is it impossible to attribute such intention to him when the legacy, if continued, would have to be paid out of the portion of his son, it being perfectly apparent, from the terms of the will, that it was his intention that his son should have a much larger portion of the estate than that left after the partition, and that the legacy to his nephew, if the estate was disposed of as provided by the will, would not encroach on the interest devised to his son.

We are of opinion that the proceedings had in the probate court in the administration case, at the suit of Mrs. Kosminsky, even if the same did not amount to a judicial determination of the right of Isaac Kosminsky to that part of the estate left with the executors, was a winding up of the estate within the meaning of that term as used in the will, and that the trial court did not err in rendering judgment for the appellees.

The views expressed above are decisive of this appeal, and renders it unnecessary for us to prolong this opinion by a discussion of the other questions presented. The judgment is affirmed.

*Affirmed.*

Writ of error refused.