## `W. B. LAHUE v. THE STATE.

### No. 3687.　Decided March 20, 1907.

**1.—Murder in Second Degree—Continuance—Second Application—Cumulative Testimony.**

Where upon trial for murder, the application for continuance did not show sufficient diligence, and the testimony of the absent witnesses was merely cumulative, a second application for continuance was correctly overruled.

**2.—Same—Witnesses in Attendance Not Used.**

Upon trial for murder, where the testimony of the absent witnesses, as set out in motion for continuance, could have been produced substantially by a witness present at the trial who was not used, it was not error upon motion for new trial that the motion for continuance was overruled.

**3.—Same—Jury Law—Challenge for Cause.**

Upon trial for murder, where objection was made to some of the jurors, the bill of exceptions should have shown that the jurors had been forced upon defendant and were subject to challenge for cause, or at least so objectionable as to be shown that they were probably unfair.

**4.—Same—Res Gestae—Evidence—Character of Defendant.**

Upon trial for murder, there was no error on cross-examination of defendant to show that he had embezzled money collected for the deceased, this being the transaction that he referred to in his remarks about being accused of dishonesty, and was part and parcel of the transaction that brought about the difficulty.

**5.—Same—Charge of Court—Provoking Difficulty.**

Where upon trial for murder the charge objected to was but an excerpt from the entire charge in regard to provoking the difficulty, and when viewed in the light of the whole charge on said issue stated the law correctly, there was no error.

**6.—Same—Statutes Construed—Defendant Arming Himself.**

Where upon trial for murder the evidence showed that defendant had a pocket knife with a blade three to three and a half inches in length, that he carried the same in his coat pocket with the blade open and made threats against the deceased of a serious character, there was no error in the expression used in the court's charge that if the jury believed beyond a reasonable doubt that defendant armed himself, etc., for the purpose of provoking the deceased to make an attack upon him, etc. The inhibition of carrying arms under article 338, Penal Code, is not the criterion of a party arming himself to provoke a difficulty with a view of using the arms he carried, and is not the measure of the right of self-defense. Overruling, Thornton v. State, 65 S. W. Rep., 1108.

**7.—Same—Abandonment of Difficulty.**

Where upon trial for murder the evidence showed that the question of abandonment of the difficulty was not in the case, there was no error in not charging thereon.

**8.—Bills of Exception—Stenographic Report—Reading Testimony to Witness.**

Upon trial for murder where the bill of exceptions to the testimony pointed out no specific grounds of objection, and it would require the court to run through the stenographic report to locate the matter, the same could not be reviewed; besides, the alleged contradiction of the witnesses in his examining trial testimony was not apparent, and there was no error in reading it to the witness.

**9.—Same—Hearsay—Conversation—Same Subject.**

Where upon trial for murder, a part of the conversation with deceased had with one of the witnesses was brought out by the defendant, the State had the right to introduce the rest of the conversation bearing upon and relating to the same subject.

**10.—Same—Cause of Death—Wound Inflicted—Charge of Court.**

Where upon trial for murder the attending physician of deceased testified that the immediate cause of death was a hemorrhage, which was produced by the wound inflicted on deceased by a knife in the hands of the defendant, the evidence was sufficient to show the cause of death, and there was no necessity of submitting a charge on this issue.

Appeal from the District Court of Fannin. Tried below before the Hon. Ben. H. Denton.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Hous Lee, G. W. Wells* and *Sturgeon & Moore,* for appellant.—On question of empaneling the jury: Wilson v. State, 32 Texas Crim. Rep., 22; Bates v. State, 43 Texas Crim. Rep., 589. On question of admitting examining trial evidence: McKnight v. State, 16 Texas Ct. Rep., 682; Thornton v. State, 65 S. W. Rep., 1108. On question of admitting conversation of deceased with witness: Morgan v. State, 16 Texas Crim. App., 593; Franklin v. State, 51 S. W. Rep., 951; Johnson v. State, 65 S. W. Rep., 93.

*F. J. McCord,* Assistant Attorney-General; *McGrady & McMahon,* for the State.—On question of empaneling jury: Campos v. State, 97 S. W. Rep., 100; Connell v. State, 45 Texas Crim. Rep., 142. On question of provoking difficulty: McCandless v. State, 42 Texas Crim. Rep., 58. On question of abandoning difficulty: Roberts v. State, 30 Texas Crim. App., 391. On question of defendant arming himself: Goodman v. State, 91 S. W. Rep., 795. On question of cause of death: Smith v. State, 33 Texas Crim. Rep., 513.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree for the homicide of J. W. Roberts, his punishment being assessed at twenty years confinement in the penitentiary.

The facts show the parties lived in Honey Grove, Fannin County; that appellant was a hotel keeper, and deceased was connected with and bill collector for a laundry. A few hours before the tragedy deceased presented a laundry bill to appellant at his hotel. The conversation became rather spirited and engendered some feeling. Deceased went away. Subsequently they met at the point of the tragedy. Appellant's contention was, that he was standing upon the sidewalk near a door, his face being turned from and his back towards the house where the deceased was, and that deceased assaulted him with a breast yoke, and struck him two or three times with it, and that he (appellant) defending against this assault, stabbed the deceased who, after lingering seventeen or eighteen days, died.

For the State the facts show that some months before the homicide appellant had been handling laundry work for the deceased on com-

mission, and had collected and appropriated several dollars of money thus collected, and had refused to pay it. On the day of the difficulty, a few hours before, deceased presented to appellant this bill and demanded payment. It was not paid, and sharp words were had and unpleasant feelings engendered. A few hours later deceased was going about his business collecting accounts, and was followed by appellant, who sought to and did bring about the difficulty, making threats as to what he would do to deceased, among others, that he would whip him, cut his heart out, etc. It is further contended that appellant drank whisky during the intervening time, and indulged in some profanity and harsh remarks against the deceased, calling him a damn son-of-a-bitch and kindred expressions, and that he had prepared himself for a difficulty by placing in his coat pocket an open knife with a blade some three to three and one-half inches in length, making the remark, in connection with this open knife, that "when he stuck that into deceased he would not whip anybody." That at the time and just before the difficulty Roberts (deceased) was in the business house of Hamilton and appellant approached and was in front of the house. When Roberts was in the house collecting some bills from the occupants, appellant stood at the front door with his hand upon his knife, pointing the other hand in the direction of the deceased, using rather loud and vociferous epithets toward the deceased; that deceased having heard these remarks, laid his bill book on the counter and picked up the breast yoke and walked within a few feet of appellant, who was facing him, and asked him if he was referring to him (Roberts) by using the remarks he did. At this juncture the parties approached each other, the deceased with the breast yoke drawn in a striking position, and some of the witnesses say as if to ward off the blow of appellant. The parties struck about the same time. Some of the testimony for the defendant is that deceased struck with the breast yoke from one to three times; while the evidence for the State was that the deceased struck with a light or pushing blow as of protecting himself, and that appellant stabbed deceased in the breast with a knife, the wound entering the cavity and inflicting an injury which resulted in his death. Appellant took the stand in his own behalf and denied making the threats directly against deceased; that the expressions he used were directed against anybody who questioned his honesty. He further states that passing along the street he had been annoyed by the expressions of two or three parties to the effect that Roberts (the deceased) had accused him of dishonesty, and that he walked up near where the tragedy occurred, and Dalton referred to the matter again, and appellant stated that whoever says he would not pay his debts when he had the money was a God damn lying son-of-a-bitch; that he did not direct it to deceased or to Dalton but he directed it against anybody who questioned his honesty. The State's testimony upon this line is that the defendant used it direct towards Roberts, and as Roberts passed into the house just a moment or two preceding the trouble he

(appellant) pointed him (Roberts) out and said he was the man to whom he was referring. This is perhaps a sufficient statement of the case to bring in review the assignments.

The first error assigned is the refusal of motion for continuance on account of the absence of the witnesses Syl Jones, Wiley Walker, S. T. Dexter, H. T. Winn and Homer Eagle. Dexter came in and testified; Winn's testimony was cumulative of and the same as Dexter's. Jones, by whom he expected to prove threats was present, and the court certifies in connection with the bill of exceptions that appellant refused and failed to place him upon the stand. The expected testimony of Eagle was a threat to whip the defendant and is not shown to have been communicated. This was cumulative and not of great importance, as we understand the record. This was the second application, and the alleged absent testimony was cumulative. In the second and subsequent application usually it is not error to refuse the continuance where the testimony is cumulative, and in all such applications the diligence must not be wanting as it was in this case. By the witnesses Jones and Walker, as well as Eagle, it was expected to prove threats by the deceased. Jones was present, Walker and Eagle absent. It is necessary in order for the party to take advantage of absent testimony, even where diligence and all the requisites of the statute have been complied with, to place all the testimony at hand before the jury. In other words, where the same facts substantially can be proved by a witness present at the trial and that witness is not used, it will not be error, upon motion for a new trial, that the continuance was overruled. A party with testimony at hand must use such testimony and exhaust all his resources in order to avail himself of the absent witnesses to prove the same facts. We are of opinion that the court did not err in refusing the application for continuance: first, because the want of diligence; second, that Dexter came in and testified to the same facts that were alleged in the application that he (Dexter) and Winn would testify to; third, that Jones was present by whom threats were expected to be shown and was not placed upon the stand. This certainly eliminates any question of continuance as to Walker. The diligence was clearly not sufficient for Eagle, and the threat was of minor importance, and as set out in the application, Jones could have shown threats, and besides, the question of threats was cumulative, evidence of threats having been introduced upon the trial.

In regard to the matter of impaneling the jury, we see no error. It may be conceded, so far as this case is concerned, which we hardly think is a correct concession, that the court erred in regard to one or two of the jurors in overruling the cause for challenge. They were peremptorily excused by appellant and did not sit upon the case. His contention is that he was compelled to exhaust his peremptory challenges upon said jurors, and that other jurors were forced upon him that he did not wish. There is no reason shown in the bill of exception why these jurors were objectionable. In order for appellant

to have availed himself of the supposed error of the court, it must be shown that one or more undesirable jurors had been forced upon him and it must be further shown that those forced upon him were subject to challenge, or at least so objectionable as to be shown that they were probably unfair. This was not done. There was no error in this phase of the record.

It is insisted that the court committed error in permitting certain questions and answers of appellant while testifying in his own behalf, which impeached his honesty, and tended to show and perhaps did show that he had embezzled money collected for the deceased, or rather for the laundry, which deceased represented. We do not think there was error in this ruling. The tragedy is supposed to have grown out of this very matter. A few hours prior to the homicide deceased went to appellant and demanded payment of money that he collected some nine to twelve months prior to that, as he had done several times before. Appellant had collected this money and had used it and had refused to pay it. On the very day of the homicide, and some hours prior thereto, the deceased demanded payment of it and referred to the fact that he had appropriated the money, and that he ought to pay it, and that he had asked him for it often enough, and if he did not pay it he would just make him a present of it. This angered appellant. This was the transaction that appellant refers to in his remarks about being accused of dishonesty. This was res gestæ; it was part and parcel of the transaction that brought about the ill-feeling and which lead up to the difficulty. This disposes of the exceptions to the argument of the State counsel that appellant was an embezzler. This argument was a legitimate deduction from the above testimony.

Appellant reserved a bill of exceptions to the following charge of the court: "Even if the defendant did provoke the deceased into a difficulty as hereinbefore stated, but in so doing it was not the intention of the defendant to take the life of the deceased or to inflict upon him serious bodily injury which would probably and naturally result in his death, then the defendant would not be guilty of murder even if the deceased was thereby provoked into making an attack upon the defendant with a deadly weapon and the defendant then resorted to the use of a knife in stabbing the deceased in order to ward off such deadly attack made by the defendant." It is contended this left the impression upon the jury that if appellant had no intention and did not seek to provoke a difficulty with the deceased, and the things the appellant said and did did not provoke a difficulty with the deceased, that he would still be guilty of some offense, but that it would not be murder. The charge quoted is but an excerpt from the entire charge in regard to provoking a difficulty, and when viewed in the light of the entire charge on provoking a difficulty, we think states the law correctly. If defendant sought deceased and by words or acts provoked him into a difficulty for the purpose of killing him, he would be guilty of murder in the first or second degree; if he provoked him

into a difficulty not for the purpose of killing but to inflict upon him injury short of death or serious bodily injury and killed, he would be guilty of manslaughter. These matters were submitted by the court in what we regard an admirable charge, at least so far as we understand the criticism.

In regard to the law of provoking a difficulty, the court uses this language: "If you believe from the evidence beyond a reasonable doubt that the defendant armed himself and went to the deceased for the purpose of provoking the deceased to make an attack upon him," etc. The point of this exception is found in the use of the expression "the defendant armed himself." The facts show in this connection that appellant had a pocket knife with a blade three to three and one-half inches in length; that he opened this knife and went around the town and exhibited it on one or more occasions; that he carried it in his coat pocket with the blade open, and had made some threats to use it upon deceased, and some of the threats were of a very serious character. Appellant's contention is that a pocket knife is not such an arm as justified the court in using the expression he did use in regard to arming himself, and cites us to Thornton v. State, 65 S. W. Rep., 1108, and article 338 of the Penal Code. There is an expression in the Thornton case, supra, which seems to support appellant's contention. Without going into a discussion of that charge, indicating that charge was a limitation upon appellant's right of self-defense, what we have to say will be directed specially at the expression of the court that "defendant armed himself," in view of the fact that the knife was a pocket knife, as above described. The Thornton case, if it undertook to limit that where a party provoking a difficulty armed himself, that it must be with such a knife of offense or defense as is mentioned in article 338, then that opinion is erroneous. The inhibition of carrying arms under article 338 is not the criterion of a party arming himself to provoke a difficulty with a view of using the arms he carries. Article 338 was simply to punish a man who carried arms inhibited by its terms, and is not a measure of the right of self-defense or criterion by which parties arming themselves to provoke a difficulty may be charged. The party may arm himself with a club or various instruments that might produce death, and with a view of using them for that purpose and yet not come within the inhibition of article 338, Penal Code. And yet if the law of self-defense or the law of provoking a difficulty is to be determined by the provisions of article 338, those phases of the law might be absolutely abolished by such a construction whenever the arms used were not inhibited by said article 338. In so far as that decision undertakes to lay down such a rule, it is overruled. If appellant armed himself with a pocket knife, and it was of such a nature that it might be used as a deadly weapon and was used as a deadly weapon, then the court was correct. We do not intend here to say that a pocket knife is necessarily a deadly weapon or it may not be, but we do intend to say

that if a party arms himself with a pocket knife of such dimensions as that it may be used as a deadly weapon and for the purpose of killing, that the charge given by the court is correct. The party's intent in arming himself under such circumstances is a matter for the jury to decide under the facts. Nor are we undertaking to decide just how far the jury may draw a conclusion from the use of such weapon as to the intent of the party; that is a matter to be governed by the facts. There was no error in this phase of the court's charge.

Exception is reserved to the charge of the court because it failed to apply the law of abandonment of the difficulty. A careful review of the testimony has convinced us of the fact that this question is not in the case. If any witness testified in this case in regard to the abandonment of the difficulty, we have overlooked it.

In regard to the exception to Luttrell's testimony that he made a certain statement at the examining trial, the objection urged is too general and points out no specific ground, and besides in order to ascertain the matter it would require the court to run over two or three pages or more of the stenographic report to locate the exact position of the question. The rule has been laid down by this court that bills of exception must be made clear, at least sufficiently so, for this court to ascertain what is meant from the face of the bills without running through the stenographic report to get the connection and supply a want of precision and accuracy in the bill of exceptions; but looking through the testimony of Luttrell we find there could be no objection to this testimony. If we understand the purpose of the objection, supplying what the record does not, appellant's counsel asked Luttrell if he did not make a certain statement on the examining trial, which was reduced to writing and which was read to him. He replied that he thought he did. In this statement it is stated that the parties met somewhere inside of the building, within eight or ten feet of the front. The State upon re-direct read another statement to him made and found in the same examining trial evidence that it was somewhere inside of the door, perhaps within about three feet of the door, something like that. This testimony, we think, under any rule, would be admissible. It is the testimony of the same witness in regard to the same identical matter, the witness not being entirely clear just how far inside the door they were at the time of their meeting.

Exception was reserved to the court' permitting the witness Pirtle to testify to a remark made by Pirtle to the deceased on the ground of hearsay, and was prejudicial. Pirtle was placed on the stand by appellant and testified at some length to a conversation had with the deceased about appellant. The material part of this may be thus stated, that Roberts, the deceased stated to Pirtle, after telling him the words they had in regard to this unpaid account, that if appellant did not pay him (Roberts) that he (Roberts) would take it out of his pelt. Pirtle said, after some other things, that he had better not undertake that, that appellant would stick a knife in him. This was a part and

parcel of the same conversation, part of it being brought out by appellant. As we understand our statute, where a part of a conversation is brought out, the opposite side has a right to introduce the balance of the conversation bearing upon and relating to the same subject. Appellant, it is presumed, introduced the threats of deceased, they being, so far as the record is concerned, uncommunicated, to show or tend to show that deceased may have been in the wrong in the final difficulty; that is, he may have himself provoked the difficulty, or may have been the aggressive party. We are of opinion that this testimony was adducible as part of the declaration and it may be more than that; it may have been probable that this testimony was adducible to explain, while under the immediate facts and circumstances, and in view of the threats of appellant, why the deceased used the breast yoke, but be that as it may, we think this testimony was admissible under the statute.

It is further contended that the court erred in not charging the jury that if they had any doubt as to whether the wound inflicted upon the deceased caused his death, then appellant could not be convicted. This error is assigned upon the wording of article 652, Penal Code, and in support of this, Morgan v. State, 16 Texas Crim. App., 593; Franklin v. State, 51 S. W. Rep., 951, and Johnson v. State, 65 S. W. Rep., 93, are cited. We do not believe this question was suggested by the evidence. Dr. White, the attending physician of the deceased, testified that the immediate cause of death was a hemorrhage; that this was produced by the wound inflicted in the right breast of deceased by a knife in the hand of appellant, and his testimony rather excludes the idea that the death was caused from any other reason than this knife wound, and that the hemorrhage was an incident of the wound. This case is directly within the rule laid down by this court and is very similar in its facts to the case of Smith v. State, 33 Texas Crim. Rep., 513; Wood v. State, 31 Texas Crim. Rep., 571, and Hart v. State, 15 Texas Crim. App., 202. The question of the gross negligence of the physician or any third party is not suggested by this evidence, and Dr. White's testimony shows that the hemorrhage was produced as a result of the wound inflicted by appellant.

We have examined this record with considerable degree of caution, and do not believe there is any reversible error contained in it. The judgment is, therefore, affirmed.

*Affirmed.*