

# IN THE
# TENTH COURT OF APPEALS

## No. 10-19-00082-CR

**CHARLES WAYNE NELSON,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 361st District Court
### Brazos County, Texas
### Trial Court No. 17-02435-CRF-361

## MEMORANDUM OPINION

In six issues, appellant, Charles Wayne Nelson, challenges his convictions for

aggravated assault of a public servant and unlawful possession of a firearm by a felon.

*See* TEX. PENAL CODE ANN. §§ 22.02(b)(2)(B) (West 2019); *see also id.* § 46.04(a) (West Supp.

2019). Because we overrule all of Nelson's issues on appeal, we affirm.

# I. SUFFICIENCY OF THE EVIDENCE

In his first three issues, Nelson contends that the evidence is insufficient to support his convictions for aggravated assault of a public servant and unlawful possession of a firearm by a felon. Specifically, in issues one and two, Nelson argues that the State failed to prove beyond a reasonable doubt that he was the assailant. In issue three, Nelson challenges the sufficiency of the evidence supporting the jury's deadly-weapon finding.

## A. Standard of Review

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).

This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

## B. Aggravated Assault of a Public Servant

A person commits an aggravated assault on a public servant if the person intentionally or knowingly threatens another with imminent bodily injury, uses or exhibits a deadly weapon during the commission of the assault, and the assault is committed against a public servant lawfully discharging an official duty. TEX. PENAL CODE ANN. §§ 22.01(a)(2) (West Supp. 2019), 22.02(a)(2), (b)(2)(B). On appeal, Nelson challenges the identity element of the charged offense, arguing that the State failed to prove beyond a reasonable doubt that he was the shooter.

The State is required to prove beyond a reasonable doubt that the accused is the person who committed the crime charged. *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) (citing *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984); *Rice v. State*, 901 S.W.2d 16, 17 (Tex. App.—Fort Worth 1990, pet. ref'd)). Identity may be proven by direct or circumstantial evidence. *Id.* (citing *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Couchman v. State*, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref'd); *Creech v. State*, 718 S.W.2d 89, 90 (Tex. App.—El Paso 1986, no pet.)). "In fact, identity may be proven by inferences." *Id.* (citing *United States v. Quimby*, 636 F.2d 86, 90 (5th Cir. 1981)); *see Clark v. State*, 47 S.W.3d 211, 214 (Tex. App.—Beaumont 2001, no pet.); *see also Jones v. State*, 900 S.W.2d 392, 399 (Tex. App.—San Antonio 1995, pet. ref'd) (explaining that the jury may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs of life when giving effect to inferences that may reasonably be drawn from the evidence).

At around 12:15 a.m. on March 21, 2017, Texas Department of Public Safety Trooper Josh Ferguson conducted a traffic stop of a vehicle driven by Michael Lott because of an obscured license plate. As Trooper Ferguson walked to the driver's side of the vehicle, he saw Nelson leaning back in the passenger's seat, looking at Trooper Ferguson through an open driver's-side rear window. Trooper Ferguson described Nelson as looking at him with "what we call a thousand yard stare which means like looking through me or like a hard concentration about something. And he's not moving

at all. I recognize like a tear drop tattoo right here (indicating)." Nelson never broke eye contact with Trooper Ferguson. Lott testified that while he was talking to Trooper Ferguson, Nelson pulled out a gun and leaned the seat back with the gun "laid . . . up on his chest" pointed toward the passenger-side window.

During the traffic stop, Lott explained to Trooper Ferguson that the front driver's window was broken and could not be rolled down. Trooper Ferguson then walked around the vehicle to the passenger side and stood at the "B pillar"—where the front door and rear doors meet. Trooper Ferguson recounted that the passenger-side front window had not been rolled down, and he denied being able to see inside the vehicle because of the dark-tinted window.

Shortly thereafter, a gunshot came from inside the car. Trooper Ferguson "got hit in the face with glass. It was a real hard percussion and I had a sharp pain in my chest." Trooper Ferguson recalled that the gunshot was coming "[r]ight at my head, and he observed a large hole near the B pillar on the top of the passenger-side window. He believed that "the muzzle was right at the window to make that big of a hole" and that the gun was shot at an upward angle. Trooper Ferguson testified that it was clear that the shooter was trying to kill him. There was no doubt in Trooper Ferguson's mind that Nelson, not Lott, was the shooter. Indeed, Trooper Ferguson identified Nelson in open court as the shooter.

In addition to the foregoing, the record reflects that the driver's front door opened and Lott exited the vehicle just as another shot was fired. Nelson fled driving Lott's vehicle. *See Figueroa v. State*, 250 S.W.3d 490, 503 (Tex. App.—Austin 2008, pet. ref'd) (noting that evidence of attempting to flee is admissible and may indicate a consciousness of guilt). Lott remained on the ground as Nelson drove his vehicle away from the scene. After Nelson fled in the vehicle, the gun was found on the pavement where Lott was laying, which was just outside where the driver's door of the car had been before Nelson fled in it. Nelson was eventually apprehended in a nearby marsh.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational juror could have concluded that Nelson used a deadly weapon—a firearm—to shoot at Trooper Ferguson, which caused Trooper Ferguson to fear for his life; as such, we hold that the evidence is sufficient to support Nelson's conviction for aggravated assault of a public servant. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B); *see also Zuniga*, 551 S.W.3d at 732-33.

## C.    Unlawful Possession of a Firearm by a Felon & The Jury's Deadly-Weapon Finding

A person who has been convicted of a felony commits the offense of unlawful possession of a firearm by a felon if he possesses a firearm after the fifth anniversary of the person's release from confinement following a conviction of the felony "at a place other than the premises at which the person lives." TEX. PENAL CODE ANN. § 46.04(a)(2). To support a conviction for possession of a firearm, the State must prove: (1) that the

accused exercised actual care, control, or custody of the firearm; (2) that the accused was conscious of his connection to it; and (3) that he possessed the firearm knowingly and intentionally. *Bollinger v. State*, 224 S.W.3d 768, 773 (Tex. App.—Eastland 2007, pet. ref'd). In determining whether a person is linked to a firearm, we can consider a number of factors, including whether the defendant owned the premises where the firearm was found, whether the firearm was in plain view, whether the defendant made incriminating statements, whether the defendant was in close proximity to the firearm and had ready access to it, whether the defendant attempted to flee, whether the defendant's conduct indicated a consciousness of guilt, whether the defendant had a special connection to the firearm, and whether the firearm was found in an enclosed space. *See Smith v. State*, 176 S.W.3d 907, 916 (Tex. App.—Dallas 2005, pet. ref'd); *Dixon v. State*, 918 S.W.2d 678, 681 (Tex. App.—Beaumont 1996, no pet.). It is the logical force of the factors, not the number of factors present, that determine whether the elements of the offense have been established. *See Smith*, 176 S.W.3d at 916.

At trial, Nelson stipulated that he was a convicted felon. Lott testified that he drove Nelson around a lot in his vehicle. A couple of days before the shooting, Lott took Nelson to the East Travel Motel so that Nelson could meet someone. Later that day, Lott returned to the motel and picked up Nelson and another person named Tyrone Greeno. According to Lott, Greeno gave Nelson a gun, and Nelson was supposed to pay Greeno $200. There was also talk that Nelson would pay Greeno in "tunechi," otherwise known

as high-grade marihuana or K2.  Despite Nelson not having any cash, Greeno let him keep the gun, which was later identified as having been stolen from a house that Greeno burglarized.

Lott recounted that Nelson would take the firearm with him when he got out of Lott's vehicle and then put the gun in the glove box when he got back in the vehicle.  Lott identified this gun as the gun that Nelson:  (1) pulled out when stopped by Trooper Ferguson; (2) laid on his chest pointed at the passenger-side window; and (3) used in the shooting.  Greeno also testified that he gave Nelson the firearm with hopes of getting some money or marihuana for it.  Furthermore, Lott stated that Nelson threw the gun out of the vehicle when Nelson fled the crime scene in Lott's vehicle.

Viewing the evidence in the light most favorable to the jury's verdict, there was ample evidence demonstrating that Nelson's connection to the gun was not merely fortuitous, and the jury could reasonably infer that Nelson exercised care, custody, control, or management over the gun voluntarily.  *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (noting that the purpose of linking the accused to the firearm is to protect an innocent bystander from conviction solely on his fortuitous proximity to a firearm); *see also Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (stating that a jury may infer intent or knowledge from any facts that tend to prove its existence, including the acts, word, and conduct of the accused).  Moreover, based on the logical force of the factors articulated in *Smith* and *Dixon*, we conclude that the elements of the offense—

unlawful possession of a firearm by a felon—have been established. *See Smith*, 176 S.W.3d at 916; *Dixon*, 918 S.W.2d at 681. Accordingly, we conclude that the record contains sufficient evidence to support Nelson's conviction for unlawful possession of a firearm by a felon. *See* TEX. PENAL CODE ANN. § 46.04(a)(2); *see also Zuniga*, 551 S.W.3d at 732-33.

Furthermore, the above-mentioned testimony sufficiently supports the jury's affirmative deadly-weapon finding. *See Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) ("To hold evidence legally sufficient to sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the statutory definition of a dangerous weapon . . . (2) the deadly weapon was used or exhibited during the transaction from which the felony conviction was obtained; . . . and (3) that other people were put in danger."); *Arthur v. State*, 11 S.W.3d 386, 389 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) ("A 'firearm' is therefore a deadly weapon, per se." (internal citation omitted)); *see also Lewis v. State*, 2012 Tex. App. LEXIS 86, at *13 (Tex. App.—Waco Jan. 4, 2012, pet. ref'd) (mem. op., not designated for publication) ("Testimony using any terms gun, pistol or revolver is sufficient to authorize the jury to find that a deadly weapon was used." (internal citations & quotations omitted)). We therefore overrule Nelson's first three issues.

## D. THE JURY CHARGE

In his fourth issue, Nelson contends that his right to a unanimous jury verdict was denied because the State presented evidence that he committed the offense of unlawful

possession of a firearm by a felon on multiple occasions, and because the jury charge did not require the jury to agree unanimously on the particular offense.

## A.    Unanimity

A jury must reach a unanimous verdict about the specific crime the defendant committed.  *See* U.S. CONST. amends. V, XIV, TEX. CONST., art. V, § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West Supp. 2019); *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011).  "The jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged.'"  *Cosio*, 353 S.W.3d at 771 (quoting *Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)).  "[N]on-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions."  *Id.* at 772.

When evidence is presented regarding multiple incidents, which would individually establish different offenses, the "[court's] charge, to ensure unanimity, would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented."  *Id.*; *see Ngo v. State*, 175 S.W.3d 738, 748-49 (Tex. Crim. App. 2005).  Because it is the burden of the trial court to instruct the jury as to the law applicable to the case, *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007), the trial court must submit a charge to the jury that "does not allow for the possibility of a non-unanimous verdict."  *Cosio*, 353 S.W.3d at 776.

## B.    Charge Error

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003).

## C.    Discussion

In the instant case, we cannot say that the trial court erred by failing to include an instruction on unanimity because Nelson's possession of the firearm on multiple days did not establish a different offense or unit of prosecution. Indeed, "[a] 'units' analysis consists of two parts: (1) what the allowable unit of prosecution is, and (2) how many units have been shown." *Ex parte Benson*, 459 S.W.3d 67, 73 (Tex. Crim. App. 2015) (internal citations omitted). "The first part of the analysis is purely a question of statutory construction and generally requires ascertaining the focus or gravamen of the offense. The second part requires an examination of the trial record, which can include the evidence presented at trial." *Id.* (internal citations omitted).

> "[W]ith a possession-oriented statute[,] the proscribed item is the allowable unit of prosecution. *See Watson v. State*, 900 S.W.2d 60, 62 (Tex. Crim. App. 1995) (holding that possession of heroin and possession of cocaine were separate offenses even though they arose out of a single transaction); *Nichols v. State*, 52 S.W.3d 501, 503 (Tex. App.—Dallas 2001, no pet.) (holding that possession of each proscribed controlled substance is a separate offense); *compare with Lopez v. State*, 108 S.W.3d 293, 300 (Tex. Crim. App. 2003) (holding that offer to sell and possession of drugs to complete that specific sale is one single offense).

*Ex parte Gonzalez*, 147 S.W.3d 474, 477-78 (Tex. App.—San Antonio 2004, pet. ref'd). "Under section 46.02(a), a defendant 'may be held accountable for the gravamen of the offense—the [unlawful carrying] of [a weapon] in our society." *Id.* at 479 (quoting *Lopez*, 108 S.W.3d at 300 & citing *Lahue v. State*, 51 Tex. Crim. 159, 101 S.W. 1008, 1010 (1907)). Accordingly, the *Gonzalez* Court held that "the allowable unit of prosecution under section 46.02 is the weapon." *Id.; see Jones v. State*, 323 S.W.3d 885, 889 (Tex. Crim. App. 2010) (noting that absent an explicit statutory statement as to the allowable unit of prosecution, the best indicator of legislative intent regarding the unit of prosecution is the gravamen of the offense); *see also Dorsey v. State*, Nos. 01-18-00520-CR, 01-18-00521-CR, & 01-18-00522-CR, ___ S.W.3d ___, 2019 Tex. App. LEXIS 10761, at *19 (Tex. App.—Houston [1st Dist.] Dec. 12, 2019, no pet.) ("The language of the felon-in-possession-of-firearm statute shows that the gravamen of the offense is the circumstances surrounding the proscribed conduct.").

In this case, the evidence showed that Nelson, a felon, took possession of a single, specific firearm days before the shooting and ultimately used the firearm to shoot at Trooper Ferguson. Because a violation under section 46.04(a) arises only by the circumstance that Nelson had been adjudicated a felon, and because he possessed a single, specific firearm illegally, we reject Nelson's contention that a unanimity instruction was required on the basis that each day's possession of the single, specific firearm constituted a separate and distinct offense. *See Ex parte Benson*, 459 S.W.3d at 73;

*Ex parte Amador*, 326 S.W.3d at 211; *Jones*, 323 S.W.3d at 889; *Ex parte Gonzalez*, 147 S.W.3d at 479; *see also Dorsey*, 2019 Tex. App. LEXIS 10761, at *19. As presented, the jury charge did not allow for a non-unanimous verdict concerning the specific criminal act—unlawful possession of a firearm by a felon—Nelson committed and, thus, was not erroneous. *See Hutch*, 922 S.W.2d at 170. We therefore overrule Nelson's fourth issue.

## E. REQUESTED JURY-CHARGE INSTRUCTION ON ACCOMPLICE-WITNESS TESTIMONY

In his fifth and sixth issues, Nelson argues that the trial court erred by failing to issue instructions in the charge regarding accomplice-witness testimony. Specifically, Nelson asserts that Lott and Greeno were accomplices to the offenses of aggravated assault of a public servant and unlawful possession of a firearm by a felon and that the trial court should have given an accomplice-witness instruction as to the testimony of each man.

An accomplice-witness instruction does not say that the jury should be skeptical of accomplice-witness testimony. *See Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). Nor does it tell the jury that such testimony should receive less weight than other evidence. *Id.* Rather, the instruction informs the jury that it cannot use the accomplice-witness testimony unless there is also some non-accomplice witness evidence connecting the defendant to the offense. *Id.* Once it is determined that such non-accomplice witness evidence exists, the purpose of the instruction is fulfilled, and the instruction plays no further role in the jury's decision-making. *Id.* Thus, non-accomplice witness evidence

can render harmless a failure to submit an accomplice-witness instruction by fulfilling the purpose an accomplice-witness instruction is designed to serve. *Id.*

"[A] harm analysis for the omission of an accomplice witness instruction should be flexible, taking into account the existence and strength of any non-accomplice evidence and the applicable standard of harm." *Id.* We examine the strength of non-accomplice witness testimony by its reliability or believability and by the strength of its tendency to connect the defendant to the crime. *Id.* The reliability inquiry is satisfied when there is non-accomplice witness evidence, and there is no rational and articulable basis for disregarding the evidence or finding that it fails to connect the defendant to the offense. *Id.* at 633.

The applicable standard of harm depends upon whether the defendant preserved error by bringing the improper omission to the trial court's attention. *Id.* at 632. When the defendant has failed to preserve error, as is the case here, the harm must be egregious. *Id.*

Assuming, without deciding, that the trial court erred by failing to provide an accomplice-witness instruction in this case, we cannot say that Nelson was harmed. Nelson's connection to both offenses was sufficiently corroborated by other evidence, including text messages between Greeno and Nelson found on Nelson's cell phone that pertained to payment for the firearm, the in-car video recording of the incident, and the testimony of Trooper Ferguson that the firearm was in the vehicle with Nelson and that

shots were fired at Trooper Ferguson from the passenger-side of the vehicle further connected Nelson to the offenses. Additional corroborating evidence included Nelson's evasion from apprehension in Lott's vehicle after the shots were fired. *See Figueroa*, 250 S.W.3d at 503 (noting that evidence of attempting to flee is admissible and may indicate a consciousness of guilt).

Because there is some evidence that tends to connect Nelson to both offenses and there is no rational and articulable basis for disregarding the evidence or finding that it fails to connect Nelson to the offense, the purpose of a proper accomplice-witness instruction was fulfilled. *See Herron*, 86 S.W.3d at 632 ("Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" (quoting *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991))). Therefore, we find that the purported error, if any, by the trial court was harmless. *See id.* Accordingly, we overrule Nelson's fifth and sixth issues.

## F. CONCLUSION

Having overruled all of Nelson's issues on appeal, we affirm the judgments of the trial court.


JOHN E. NEILL
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Neill
(Chief Justice Gray concurring with a note)*
Affirmed
Opinion delivered and filed March 11, 2020
Do not publish
[CRPM]

*(Chief Justice Gray concurs in the Court's judgment.  A separate opinion will not issue.)

