[No. 3872.]

## TONY THUSTON v. THE STATE.

1. RIGHT OF SELF DEFENSE—CHARGE OF THE COURT.—It is a well settled principle of law that, when a person seeks or brings on a difficulty, and arms himself with a deadly weapon, with the intention of taking life or doing some serious bodily harm, and he willingly enters into such difficulty, and takes life, he can not claim the benefit of the law of self defense. See the opinion *in extenso* on the question, and the statement of the case for charges of the court upon the subject, *held*, correct.

2. SAME.—The evidence in this case tended to establish the defensive theory that the accused did not provoke the difficulty with the view of obtaining a pretext to kill, but that, if he, in fact, provoked the combat or produced the occasion, he did so without any felonious intent, his intent being only to commit a battery. If so, the killing, if committed to save his own life, would be manslaughter. Under the circumstances of this case this theory should have been submitted to the jury by the charge of the court, and the omission was error.

APPEAL from the District Court of Fannin. Tried below before the Hon. D. H. Scott.

This is the appellant's second appeal from convictions in the second degree for the murder of Charley Smith, in Fannin county, Texas, on the second day of October, 1882. A term of eight years in the penitentiary was the penalty assessed by the jury. The evidence was substantially the same as that adduced on the former trial, the report of which will be found in the eighteenth volume of these reports, commencing on page 26.

The charges of the trial court, referred to in the first head note of this report, read as follows:

"5. Homicide is justifiable when it is committed in lawful self defense. This occurs when one is first unlawfully attacked by another, in such a manner, and with such means, as to produce in the mind of the party thus attacked a reasonable expectation, or fear of death, or of some serious bodily injury, and he kills the person thus attacking him in order to defend himself. One who is so unlawfully attacked is not bound to retreat in order to avoid the necessity of killing his assailant; but, on the other hand, one who seeks, or brings on a difficulty, and arms himself with a deadly weapon, with the intention of taking life,

or doing some serious bodily injury, and he willingly enters into such difficulty and takes life, can not claim the benefit of the law of self defense; and this is the case although, during the progress of the conflict or difficulty, his own life may have been put in danger."

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"9. If you find, from the evidence in this case, that the defendant intentionally shot and killed Charley Smith, but you find from the evidence that, at the time, the said Smith was about to take the defendant's life, or to do him serious bodily injury, or it reasonably so appeared to defendant, by the acts, or by the words coupled with the acts, of the deceased, and on account of such danger, or reasonable appearance of danger, defendant shot Smith, then his acts would be in self defense, and if you so believe, you will find the defendant not guilty. But if the defendant willingly entered into a fight with a deadly weapon, or purposely incited said Charley Smith to come to his door to fight, and thereupon shot him; or if defendant got into a quarrel with Charley Smith, and while in such quarrel purposely incited, or dared said Charley Smith to come to his door, or out of his house to fight, and if the defendant at the same time armed himself with a deadly weapon, with the intention of taking Smith's life, and shot and killed said Smith upon his coming to the door, or out of the house, then this would not be in self defense (unless Smith brought on the attack, as before explained), although Smith may have advanced to, and opened his door, armed with a gun, intending to fight.

"10. If Charley Smith threatened to take the life of the defendant, and such threat, or threats, were communicated to defendant before the killing, and if Smith, by any act done at the time, manifested an intention to execute the threats so made, and the defendant thereon shot and killed said Smith, in order to prevent its execution, then defendant is justifiable, unless he willingly brought on, or incited the aggression, and at the same time expecting to use a deadly weapon [upon] Smith, and to take his life or to do him some serious bodily injury."

The motion for new trial raised the questions discussed in the opinion.

*Taylor & Galloway,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

HURT, JUDGE.  This was a conviction for murder of the second degree, the punishment being fixed by the jury at confinement in the penitentiary for eight years.

The homicide occurred in Fannin county, Texas, on the night of October 2, 1882.  The defendant and his wife, and the deceased, Charley Smith, and his wife, lived in the same house, a box structure of two rooms with four doors, one in the north end and one in the side of each room.  The defendant occupied the east room.  The defendant and the deceased went to the town of Honey Grove on the day of the homicide.  The deceased came home first, arriving some time after dark, and had seated himself in his room, and was playing the violin, when defendant reached home, which was about eight or nine o'clock.  Defendant spoke from his room (between which, and the room occupied by the deceased, there was no door or other opening), and asked why the deceased left Honey Grove without waiting for him as he agreed to do.  Deceased replied that he did not wait because he thought that defendant had gone by some house for his, defendant's, wife.  The defendant said:  "You are a liar."  The deceased retorted:  "You are a G—d d—d liar, and a s—n of a b—h."  Defendant replied:  "You can't come out of doors and say that."  About this time the defendant or some one else stepped out of defendant's north door.  Deceased, at about the same time, stepped to his front door, kicked a plank loose and jerked the door open with his right hand.  At the same instant of time, some one out of doors walked into defendant's room, and immediately the gun fired from the direction of the defendant's north door, and the deceased fell.  When the gun fired, the deceased's door was open wide enough to admit a man's head, and the deceased was standing inside the room.  He was shot in the breast, and lived but a few minutes.

These are the facts of the killing, as testified to by the wife of the deceased at a former trial of the case.  She having died, her narration was reproduced by the county attorney.  Upon cross-examination, she stated that the deceased had his gun in his hand when he went to the door just before he was shot.  When he opened the door he held the breech of the gun under his left arm, the muzzle pointing downward.

Hamp Stevens, a witness for the State, testified:  "I live about a half mile from the house of defendant.  About nine or ten o'clock, on the night of the homicide, the defendant came to my house and told me that he had killed Charley Smith, and

asked me to go over there.   *   *   *   He said he did so in self defense; that Smith had come to his, deceased's, door, opened it, having a gun in his hands, holding it in about half raised position, when he, defendant, fired.   *   *   *   When he, defendant, first went to his door, he did not have a gun, but when he saw the deceased have his gun, he, defendant, stepped back into his house, reached his gun, returned and fired.

Upon the subject of self defense, the court charged the jury correctly; first affirmatively for the defendant, and the qualifications made in the charge were correct propositions of law which were made pertinent by the facts in the case.   For it is well settled that, when a person seeks or brings on a difficulty, and arms himself with a deadly weapon, with the intention of taking life, or doing some serious bodily harm, and he willingly enters into such difficulty and takes life, he cannot claim the benefit of the law of self defense.   This principle, so far as provoking the difficulty, is thus stated in a note to Stafford's case (Hor. and Thomp. Cases on Self Defense, 226): "If he provokes the combat, or produces the occasion, in order to have a pretext for killing his adversary or doing him some bodily harm, the killing will be murder, no matter to what extremity he may have been reduced in the combat."

While this proposition is correct, and made pertinent by the evidence, yet it is not absolutely certain that appellant provoked the difficulty in order to have a pretext for killing his adversary. There is evidence presenting another theory which is more favorable to the defendant, viz: that he did not provoke the difficulty with a view of having a pretext to kill, but that, if he in fact provoked the combat or produced the occasion, he did so without any felonious intent, intending an ordinary battery merely; and that, if this be the case, the killing would be manslaughter, if done to save his own life.

And when we consider that, in every instance in which the court instructed the jury upon the law of self defense, that which was favorable to defendant was qualified by a proviso by which the jury were told that self defense could not be invoked if the defendant provoked the difficulty with a view to take the life of his adversary, or willingly entered into the combat with intent to kill his adversary, it became of the first importance to the rights of defendant that his theory be presented to the jury, and let them pass upon and decide which of the two was cor-

rect. We are not discussing the burden of proof or the reasonable doubt.

It was in evidence that deceased, when challenged, came out with his gun; that defendant, seeing this, stepped back and got his gun. It was also in evidence that deceased, on that very day, threatened to kill defendant before next morning. Under these facts, was it not probable that the challenge given by defendant was to engage in an ordinary battery merely, and that seeing his adversary advancing with his gun, and believing from the threats made by deceased on that day, that his adversary was intending to carry into execution his threats, defendant then shot and killed the deceased, and that he did not, in fact, provoke the difficulty in order to have a pretext to kill; nor did he enter into the combat with a view of killing his adversary or of inflicting serious bodily harm upon him?

We are not attempting to decide which theory is correct, that of the State or that of the defense. There being evidence presenting both, it was the duty of the court to apply the law to each. This was not done, and we think this omission was very clearly calculated to injure the defendant. The judgment, is reversed and the cause remanded.

*Reversed and remanded.*