No. 2462.

## FELIPE ARRELLANO v. THE STATE.

MANSLAUGHTER—SELF DEFENSE—CHARGE OF THE COURT.—See the opin-
ion and the statement of the case for evidence on a murder trial, which,
while it did not demand a charge upon the law of self defense, was of
such character as to demand a charge upon the law of manslaughter.

APPEAL from the District Court of Duval. Tried below before
the Hon. J. C. Russell.

This conviction was in the second degree for the murder of
Augustin Perez, in Duval county, Texas, on the fifth day of
August, 1884. The penalty assessed was a term of thirty years
in the penitentiary.

The opinion sets out in full the testimony of Eusebio Carrillo,
the first witness for the State.

The substance of the testimony of Julian Palacios, the second
witness for the State, was that, as justice of the peace, he held
the inquest on the body of the deceased. He saw the body about
thirty minutes after the death. He could not now describe the
wounds. He did not see the defendant after the killing, but saw
him about eleven o'clock on the day of the homicide. He could
not now say whether or not the defendant was then drunk.

The testimony of the several witnesses for the defense, none
of whom claimed to witness the shooting, was to the effect that,
as late as two o'clock on the day of the homicide, which was near
the time of the shooting, the defendant was drunk.

No brief for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

HURT, JUDGE. This is a conviction for murder of the second
degree, the punishment being assessed at thirty years confine-
ment in the State penitentiary.

Concerning the facts immediately attending the homicide,
Eusebio Carrillo, a witness for the State, testified as follows:

"I knew Augustin Perez; he is dead now; he died August 5,

1884. Defendant killed him with a pistol in the town of Concepcion, in Duval county, Texas, at the house of Andreas Delgado. I was present when defendant killed deceased. The deceased and I were at Delgado's, burning trash in the yard. The deceased was raking up trash with a hoe, when the defendant rode up on horseback and saluted us. Defendant said that this man—meaning deceased—had said that he, the defendant, had stolen some horses, and used some profane language to deceased. Then deceased laid down his hoe and went up to defendant and seized the bridle of his horse with one hand and caught hold of one of defendant's hands with his other hand. They then had a kind of melee around the yard, the defendant being on his horse. I did not see any blow struck by either party, but I saw a pistol in the hand of defendant. After a while deceased let go his hold on the bridle of defendant's horse and also let go of defendant's hand and started toward the house; and then, while deceased was going toward the house, defendant shot him once, and as he was about to enter the door of the house he shot him again; he shot him twice. Defendant was close to deceased when he shot him. After the shooting defendant rode out of the yard on horseback. Defendant was living at Concepcion at the time. I don't know how long he had been living there. I did not see him after that until I saw him here in court. I don't know how long I have known defendant, but about a year before the shooting took place. I had seen him often. There were other houses near where the shooting took place. I know Francisca Longoria. About twenty yards from where the shooting occurred there was nothing to obstruct the view from the house where Francisca Longoria lived to where the killing occurred. The killing occurred about two or three o'clock in the afternoon. When I first saw the pistol of defendant was when he and deceased were whirling around. Defendant had his hand up with the pistol in in his hand. I saw no blow struck, neither did I hear anything spoken by either defendant or deceased at this time. I was about five varas from defendant and deceased when the shooting occurred. Deceased was about eight varas from defendant when he laid down his hoe and started toward him."

Counsel for appellant requested instructions upon the law of manslaughter, which were refused.

If appellant provoked the difficulty, or produced the occasion for the purpose of slaying the deceased, he would be guilty of murder. On the other hand, if this was not his intention, then

a charge on manslaughter was demanded by the facts.　Hence the necessity for submitting to the jury the law governing the case in which the accused provokes the difficulty, as well as the law of manslaughter, so that the jury can pass upon the truth of these propositions.

We do not think the evidence required a charge upon self defense; neither need the action of the court in overruling the application to continue the case be reviewed. .

Because of the error in the charge indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered October 22, 1887.