JOHN BROWNLEE v. THE STATE.

No. 3023. Decided June 14, 1905.

1.—Murder in Second Degree—Evidence—Hearsay.

Testimony as to the conduct of deceased on the night of the killing, etc., to the effect that deceased was a nice and perfect gentleman, defendant not knowing of such conduct, was inadmissible.

2.—Same—Evidence—Animus of Witness—Contradicting Testimony.

On a trial for murder, it was error not to permit defendant to introduce testimony by the witness on cross-examination to show his animus and hostility toward the defendant and to contradict the State's witness. See opinion for questions set out in full which were erroneously excluded.

3.—Same—Impeaching Testimony.

It was error on a trial for murder, not to permit defendant to impeach a State's witness, by showing by another witness that said State's witness had made certain contradictory declarations to certain parties about the difficulty between defendant and deceased.

4.—Same—Evidence—Appearance of Deceased.

On a trial for murder, it was error to permit a witness to testify that prior to the killing in the afternoon of the day of the homicide, he saw deceased at a certain place and he then looked peaked and like he had been sick, as defendant did not know anything about this, and the condition of deceased was apparently obvious.

5.—Same—Charge of Court—Manslaughter—Cooling Time—Provoking Difficulty.

Where in a prosecution for murder the evidence showed that there were two difficulties, and that the acts that constituted the provocation occurred some four or five minutes before the homicide, in what was termed the first difficulty; the court in his charge on these facts should have submitted the law as to cooling time; and the facts adduced by the State, also showing that the defendant returned after the first difficulty and provoked a second one with the deceased, a charge on provoking the difficulty would also have been authorized; and it was error in a charge on manslaughter not to have submitted the law on cooling time, although the general charge on manslaughter did not limit the acts constituting the provocation for sudden passion to acts occurring at the very time of the homicide, and was in other respects correct.

6.—Same—Charge of Court—Provoking Difficulty.

Where the evidence on a trial for murder was sufficient to authorize a charge on provoking the difficulty, it should have stated that if the defendant returned to the scene of the difficulty for the purpose of provoking a difficulty by the use of words or acts, with the specific intent to kill, he would be guilty of

murder, and if without such specific intent, then he would be guilty of man-slaughter. See opinion for erroneous charge on this phase of the case.

**7.—Same—Self-Defense—Appearance of Danger.**

On a trial for murder, where the evidence tended to show that defendant probably returned to the place of the first difficulty for the purpose of inquiring of deceased why he struck him and deceased renewed the difficulty, and defendant's life was in danger or his body was in danger of serious injury, then defendant would have the right to act upon the appearance of danger and slay the deceased, and the court should have so charged.

**8.—Same—Self-Defense—Stand Point of Defendant.**

On a trial for murder the court, in charging on self-defense, should have told the jury to consider the facts from defendant's standpoint, and it was error to tell the jury that they must consider the facts from the standpoint of defendant as near as they are able.

**9.—Same—Deadly Weapon—Charge of Court.**

On a trial for murder, where there is an issue of the deadly character of the weapon, the statutes, articles 717 and 719, Code Criminal Procedure, should be given; however, if the knife used is of such character and the blade of such length as to show it to be a deadly weapon, it would not be necessary to give these articles in charge.

Appeal from the District Court of Walker. Tried below before Hon. Gordon Boone.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Dean, Humphrey & Powell,* for appellant.—On question of conduct of deceased: Duffin v. State, 11 Texas Crim. App., 76; Watts v. State, 18 id., 381. On question of charge on manslaughter: Waddlington v. State, 19 Texas Crim. App., 266; Cooper v. State, 12 Texas Ct. Rep., 620; Winkfield v. State, 41 Texas, 143; Eanes v. State, 10 Texas Crim. App., 421; Connell v. State, 75 S. W. Rep., 512; Warthan v. State, 55 S. W. Rep., 55; Melton v. State, 11 Texas Ct. Rep., 744. On question of self-defense and provoking the difficulty: Shannon v. State, 35 Texas Crim. Rep., 2; Melton v. State, 11 Texas Ct. Rep., 744. On question of reasonable appearances of danger: Adams v. State, 84 S. W. Rep., 231.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of five years.

Appellant's second assignment of error complains that the court permitted Mrs. Maggie Gibbs to testify to the conduct and behavior of deceased on the night of the killing and prior to the breaking up of the dance at Bendy Gibbs', she stating that said conduct of the deceased was as nice as could be, that he acted a perfect gentleman. If as appellant insists, defendant did not know of the conduct of the de-

ceased, any conduct on his part not brought home to his knowledge would not be admissible against him in a subsequent trial.

Appellant's third assignment insists that the court erred in refusing to permit appellant to prove by John Gibbs placed upon the stand by the State, that he did not say, "Look out boys, they both have knives," and that he saw no knife; and if said witness did not have a conversation with one John Floyd, stating time and place, in which conversation the said witness stated to John Floyd, that he knew of and about the difficulty between defendant and deceased; that he saw the same, and that if he would tell what he knew about it, there would be no case against defendant. Appellant further complains that the court erred in refusing to allow defendant to ask said witness John Gibbs, if the said John Floyd did not then and there say to him, and ask him, why he did not tell what he knew about said difficulty; and if the said witness did not then and there reply to the said Floyd that he could not do it; that it would clear John Brownlee and implicate another party. The State objected to proof by appellant of the above, on the ground that the same was not in rebuttal, was immaterial, irrelevant and secondary. Defendant stated that he offered said testimony to show the animus and hostility of the witness towards the defendant, and also for the purpose of contradicting the witness by the said John Floyd. This testimony was admissible to show the bias, motive and animosity of the witness, was not upon a collateral issue; and the court committed error in refusing to permit the same to be proved. Watts v. State, 18 Texas Crim. App., 381.

Appellant's fourth assignment shows that appellant attempted to impeach said witness John Gibbs by the testimony of E. W. Boazman, constable of precinct number 1 of Madison County, on the same line as stated in the third assignment, which the court refused. There was also error in this.

The fifth assignment complains that the court permitted W. D. McDonald to testify that prior to the killing, in the afternoon of the day of the killing, he saw deceased in the town of Madisonville, and he then looked peaked, and looked like he had been sick. The objection to this testimony is, that defendant did not know anything about this, and the condition of deceased was apparently obvious. These objections are well taken.

The sixth assignment complains that the court erred in the 19th, 20th and 21st paragraphs of the general charge to the jury relating to submitting the law of manslaughter, on the ground that said charges limited the acts, constituting provocation for sudden passion, to acts occurring at the very time of the homicide; and that under the evidence in this case for the State, the acts that constituted the provocation occurred some four or five minutes before the homicide, and in what was termed by the witnesses, the first difficulty. The court in his charge on these facts should have submitted to the jury the law as to cooling time. Without detailing all the evidence, that on the part of the State

shows there were two difficulties. The testimony on the part of defendant shows that he was not the aggressor in either difficulty, but that deceased assaulted him, in each instance without cause or excuse. Nat Chambless, witness for the State, testified in reference to the difficulty, as follows; after stating that he went to the party at Bendy Gibbs, and lingered around the house, he testified: "I was at the gate, and the boys commenced coming out of the house, and Dave Brizzolari and Wall McDonald (deceased) commenced fussing and cursing one another. Brizzolari said somebody tried to run over him on a horse, and he could whip the son-of-a-bitch that did it. Deceased replied, 'you need not jump on me. I didn't run over you, and I ain't afraid of a damned one of you.' John Brownlee (defendant) came around and told Wall, 'Damn you, what have you got to do with it,' and Wall said, 'You son-of-a-bitch, I can whip you before you can turn around,' or something like that, and made a pass at him, and John made a lick at Wall; and the best I could see, Wall knocked the lick off and struck him; and when he did that, John turned around and walked off, and was gone, I guess, about four or five minutes. When he came back he came back and just walked pretty brisk up to where Wall was and he come up as if he was in a hurry. And while John Brownlee was gone Wall had changed his position, and was addressing somebody a little on his right, and had sorter turned his side or back to where he was standing, when John Brownlee walked off. When Brownlee walked up he said, 'Where is the son-of-a-bitch that called me one?' and had his hand drawn, and about that time he struck him with a knife. Wall had his back pretty close to the fence from the yard fence, two or three feet, and John Brownlee said, 'Where is the son-of-a-bitch that called me one?' Wall (deceased) turned and faced him, and by the time he got straight John said, 'you son-of-a-bitch,' and hit him with a knife; and Wall braced himself up and said, 'you son-of-a-bitch, you have cut me, but I can whip you yet,' and he knocked Brownlee down."

This clearly, as we take it, as laid down in Franks v. State, decided at the present term, authorizes a charge upon cooling time. It also authorized the court to charge the law in reference to provoking a difficulty. We do not think the charges complained of limited the acts constituting the provocation for sudden passion to acts occurring at the very time of the homicide; but the jury are clearly told that they could consider all the circumstances; and in that connection that a blow, causing pain or bloodshed, or any other provocation, could be considered by the jury in passing upon the adequacy of the cause.

We notice in the 22nd paragraph of the charge, the court tells the jury: "If you believe from the evidence that the defendant did not return to the scene of the difficulty for the purpose of provoking or bringing on a difficulty with deceased, but that defendant returned to said scene for the purpose of rejoining the crowd there assembled, then the defendant had a right to return to said place for such pur-

pose, and his right of self-defense would not be forfeited, etc." As stated, heretofore, the court should have given a proper charge on provoking the difficulty. However, this is not a proper presentation of the law of provoking the difficulty. The charge should have stated that if the defendant returned to the scene of the difficulty for the purpose of provoking a difficulty, and did provoke one by the use of words or acts, and that he did so with the specific intent to kill, he would be guilty of murder. If he did not provoke the same by words or acts, with such specific intent, then he would be guilty of manslaughter. We are not here attempting to lay down a form of charge, as our decisions are replete with forms of such charges.

The court should have also charged that if the defendant returned to the place of the first difficulty for the purpose of inquiring of deceased, why he struck him, and deceased renewed the difficulty, and defendant's life was in danger or his body was in danger of serious injury, then in that event, defendant would have the right to act upon the appearances of danger and slay deceased.

In the 30th paragraph of the court's charges we find the following language: "In passing upon the question of self-defense, you will consider the case as nearly as you are able from the standpoint of the defendant at the time of the killing, and view it as nearly as you are able in the light of all the facts and circumstances surrounding defendant, as it appeared to him to be." The jury must look at the facts from the defendant's standpoint, and it is not proper for the court to tell the jury that they must consider the same from the standpoint of defendant as near as they are able. It is their duty to consider the same from defendant's standpoint.

We note that the record does not disclose the size or character of the knife with which the wound was inflicted. If the knife is not a deadly weapon, the court should charge articles 717 and 719 Code Criminal Procedure. For a discussion of this subject see the Shaw case, 34 Texas Crim. Rep., 435. However, if the knife is of such a character and the blade of such a length as to show it to be a deadly weapon, it would not be necessary to give these articles of the statute in charge. Or if there is an issue of the deadly character of the weapon the statutes should be given.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*