## IRA W. McDOUGAL v. THE STATE.

### No. 3932.   Decided February 23, 1916.

### Rehearing granted March 22, 1916.

**1.—Murder—Provoking Difficulty—Charge of Court.**

Where, upon trial of murder, the testimony of the State raised the issue of provoking the difficulty, the court properly submitted a charge thereon. Distinguishing McCandless v. State, 42 Texas Crim. Rep., 58 and other cases. Following Tardy v. State, 47 Texas Crim. Rep., 444, and other cases.

**2.—Same—Provoking Difficulty—Manslaughter—Rule Stated—Intent.**

If defendant provoked the difficulty with no intent to kill the deceased, or to inflict serious bodily injury upon him, and thereby brought about the necessity of killing the deceased to save his own life, or to prevent serious bodily injury, being inflicted upon him by deceased, the offense would be manslaughter. Following Jones v. State, 17 Texas Crim. App., 602, and other cases.

**3.—Same—Provoking Difficulty—Manslaughter—Charge of Court—Self-defense—Intent.**

Where, upon trial of murder, the court instructed the jury, in effect, that if they had a reasonable doubt that defendant intended by his words and conduct to provoke the difficulty his right of self-defense would be abridged, or if the jury had a reasonable doubt as to whether the defendant employed words or acts towards deceased that were reasonably calculated to provoke a difficulty, his right of self-defense would be abridged, the same was reversible error, and this was not a correct exposition of the law as applicable to manslaughter.

**4.—Same—Provoking Difficulty—Charge of Court—Manslaughter.**

Where, upon trial of murder, the evidence raised the issue that if the defendant provoked the difficulty he did not at the time intend to kill the deceased or inflict serious bodily injury, and that he killed him because deceased advanced upon him with an open knife, this theory of the case should have been submitted to the jury on the issue of manslaughter, and as the court's charge as given only authorized the jury to acquit or find him guilty of manslaughter, in the event they found he did not provoke the difficulty, regardless of his intent of doing so, the same was reversible error.

**5.—Same—Husband and Wife—Cross-examination—Impeachment.**

Where, upon trial of murder, the wife of defendant was introduced by him as a witness and testified as to the facts immediately attendant upon the homicide, how it arose and occured, and that deceased was assaulting the defendant with an open knife when defendant shot him, there was no error in permitting the State on cross-examination to ask her if on the day of the homicide and shortly thereafter, she did not tell others that defendant killed deceased because he had sued him, and that she did everything to keep him from doing it, which she denied, and thereupon permitting said witnesses to whom she had made this statement to testify that she did make the same, and thus impeach her testimony. Following Johnson v. State, 72 Texas Crim. Rep., 387, and other cases. Distinguishing Hobbs v. State 53 Texas Crim. Rep., 71.

**6.—Same—Rule Stated—Husband and Wife—Cross-examination—Impeachment.**

The defendant's wife, when he places her upon the stand as a witness may be impeached by showing that she had made contradictory statements, the same as any other witness as to matters she testified to on direct examination at defendant's instance.

**7.—Same—Evidence—Character of Deceased.**

Where, upon trial of murder, defendant attacked the reputation of the deceased as a peaceable and law-abiding citizen, it was permissible for the State to

show by the intimate associates of deceased, who had known him for many years, that he was not a man who cursed, and they had never heard him use any oath; defendant having testified that deceased cursed him at the time of the difficulty. Following Bearden v. State, 83 S. W. Rep., 808, and other cases.

### 8.—Same—Threats—Charge of Court.

Where, upon trial of murder, there was no evidence that deceased prior to this difficulty had ever made any threats against the defendant, and the only threats testified to by defendant, if made by deceased, were such which occurred in the wordy altercation immediately preceding the fatal shooting, no charge on threats was called for or was required; besides a charge on threats was given even more favorable to defendant than he was entitled to. Following Hancock v. State, 47 Texas Crim. Rep., 3, and other cases.

Appeal from the District Court of Smith. Tried below before the Hon. R. M. Smith.

Appeal from a conviction of murder; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Simpson, Lassiter & Gentry,* for appellant.—On question of provoking the difficulty: Gaines v. State, 58 Texas Crim. Rep., 631, 127 S. W. Rep., 181, and cases cited in opinion.

On question of impeaching the wife of defendant: Drake v. State, 29 Texas Crim. App., 265; Woodward v. State, 97 S. W. Rep., 499; Cogdell v. State, 63 S. W. Rep., 645; Watson v. State, 95 S. W. Rep., 115; Stright v. State, 138 S. W. Rep., 742; Treadway v. State, 65 Texas Crim. Rep., 208, 144 S. W. Rep., 655.

*C. C. McDonald,* Assistant Attorney General, and *James M. Edwards,* for the State.—On question of provoking the difficulty: Yarborough v. State, 66 Texas Crim. Rep., 311, 147 S. W. Rep., 272; Courtney v. State, 57 S. W. Rep., 654; Herrington v. State, 63 S. W. Rep., 562; Thumm v. State, 24 Texas Crim. App., 667; Melton v. State, 24 id., 47, and cases cited in opinion.

HARPER, JUDGE.—Appellant was convicted of murder and his punishment assessed at twenty years confinement in the State penitentiary, from which judgment he prosecutes this appeal.

Appellant shot and killed James E. Vickery on or about the 27th day of last August. He does not deny that fact, but claims he was justifiable in so doing. All the evidence shows that deceased was a merchant engaged in business at Lindale; that he had sold appellant goods on a credit in some amount, and had brought suit against appellant for $28, and sued out a writ of attachment, placing it in the hands of the constable of the precinct. Appellant was a farmer, living a few miles from Lindale. Mr. York, the constable, says he went to appellant's home and told him he had a writ and was going to levy on a certain horse. Appellant said this horse belonged to his 20-year-old son. The constable says when he levied on the horse, appellant called to his son and said, "Saddle me a horse and give me my old

shotgun and I will go there and settle with the old gray headed son-of-a-bitch." York says he talked with appellant and reasoned with him, and appellant apparently become reconciled and gave a replevy bond for the horse.

Appellant admits the attachment, and that he claimed the horse was the property of his son, and that he gave a replevy bond, but denies most emphatically that he said of and concerning Mr. Vickery the things the constable says he said. He denies he called for his old shotgun and said he would go up there and settle with the old son-of-a-bitch. He says he called to his son to saddle his horse so he could go to a neighbor's and get him to sign the replevy bond. Shortly after signing the replevy bond, appellant hitched up his wagon, and he and his wife and son went to Lindale, carrying the gun with him in the wagon. He says he was on his way to a neighbor's to attend to some business, and carried the gun along to go squirrel hunting. He says when he got to Lindale he got out of the wagon to have a note drawn for $20 for Mr. Ginn to sign, as he, Ginn, owed him that amount on a buggy, and he wanted to borrow the money from the bank and pay deceased what he owed him.

The State's contention is that when appellant got out of the wagon he went to see a lawyer, Mr. Mallory, and while in Mr. Mallory's office said that deceased, Vickery, had attached Henry's horse, and "I can tell you what I am going to do—I am going to kill the old s—n of a b—h or he is going to kill me." Appellant denies making this remark to the lawyer, but admits talking to him about the debt, and says he told him it was only $8.50 and not $28, and he was in town to settle the debt.

The State shows that appellant then went to the depot where deceased was; that deceased left the depot and went to his store. Appellant gives as his reason for going to the depot, that he went to the bank to borrow the money to pay the debt and found the banker was at the depot and was going on the train to Tyler, and he went to the depot to see the banker, but failed to get there in time. That on his way to the depot he met deceased and asked him if he would be at the store, when deceased drew his knife and said, "You son-of-a-bitch, what do you want?" when he replied, "I want to settle with you, and will be back up there as soon as I go to the depot."

The State's contention is they did not meet on appellant's way to the depot. All agree that deceased did go from the depot to his store, and was either standing or sitting on his gallery when appellant returned from the depot and went to near the store, and all agree that the difficulty then ensued, although the evidence presents widely variant versions.

The State's contention is that deceased was sitting on the gallery to his store when appellant came up and they began talking. Pretty soon appellant called deceased a s—n of a b—h, when deceased told appellant "to go on away, that he did not want to dirty his hands with him." That defendant then dared him to come out on the ground,

saying, "I just dare you down on the ground, G—d d—n you, I will whip you before hell can scorch a feather," when deceased replied, "Go on away from here, you cowardly rascal." That they continued to fuss, appellant calling deceased a son of a b—h three or four times, when appellant left the store and went to his wagon and got his gun; that when he got his gun appellant's wife and son called to him, "Don't do that." That appellant got his gun and returned to the store, and raised his gun in a shooting position and lowered it, and when deceased said, "Shoot, you won't shoot, you cowardly rascal,—you haven't got the nerve," appellant again raised the gun and fired. That deceased was on his gallery, making no advance on appellant or threatening gesture, when appellant shot and killed him.

Appellant says when he returned from the depot he went back by deceased's store to settle with deceased, and told deceased to get his books and they would settle; that deceased replied, "G—d d—n you, you s—n of a b—h, I ain't going to show you nothing," when he replied, "There ain't no use of me and you having trouble; I want to pay you every cent I owe you; if I owe you $28 I am willing to pay it," but he did not think he owed but $8.50. That deceased had a knife in his hands, and he walked off to his wagon; that deceased kept cursing him, and said he was going to kill him (appellant) and that he need not get around his wife's coat tail, as he, deceased, was going to kill him. That he, appellant, got his gun and walked back to near the store and told deceased, "If you don't want to settle with me, you can go out there and settle with my wife and the boy." That deceased kept cursing and abusing him, and started as if to go in the store, when he threw his gun on him and said, "Don't you go in there to get that gun." That deceased turned back and cursed him again and started towards him with an open knife, saying he was going to cut appellant's throat, when he shot.

The theory of both the State and defendant is each supported by several witnesses, and it is enough to say that if the State's contention of the homicide is believed it will support a verdict of murder; and if appellant's contention was accepted as the correct version of the difficulty, the case would be no more than manslaughter, if not justifiable homicide.

One of the contentions relied on by appellant is that the court erred in submitting the issue of provoking the difficulty, the contention being that if the State's theory of the case is true, there is no evidence that appellant provoked the difficulty with the intention of killing deceased or doing him any serious bodily injury. He cites us to the cases of McCandless v. State, 42 Texas Crim. Rep., 58, 57 S. W. Rep., 672; Grayson v. State, 57 S. W. Rep., 808. In the Grayson case it is shown that deceased was the party who was in search of the appellant, and went to where the appellant was, and the facts are wholly dissimilar to the facts in this case; and as to the McCandless case, it cites an illustration which we think aptly illustrates that in this case the court

did not err in submitting to the jury the question of whether or not appellant by his acts and conduct provoked the difficulty. In the McCandless case it is said: "To illustrate—A has a grudge against B. He arms himself and goes to the place where he knows he will meet B. He knows or has reason to believe that B will resent an insult  He curses and abuses B.  B resents the insult, whereupon A shoots and kills B.  Now, if A sets up self-defense, it would be the duty of the court in giving a charge on that subject to give a charge also on provoking the difficulty, limiting his right of self-defense." Measured by this rule of law, we think the evidence in this case authorized the court to submit the issue of provoking the difficulty.. Of course, if the defendant's evidence presents the way the difficulty arose and terminated appellant was not guilty of provoking any difficulty either with the view of killing deceased or doing him any serious bodily injury. In fact, according to his testimony he did nothing tó provoke a difficulty, and he shot to save his own life.  But in passing on whether or not an issue is in a case, we must look to the whole evidence, and if there is evidence, according to the State's contention, to authorize the submission of an issue to the jury for them to determine which state of facts is true, the court does not err in properly submitting such an issue to the jury for determination.  Can the court, as said in some of the cases, lay its hands on evidence that authorizes the submission of the issue?  Appellant testified as a witness, and he testified that deceased was a high-strung man and would fight; that he knew this to be true, and that deceased went by the name of "Fighting Jim Vickery."  Thus he was aware that deceased was the character of man who would resent an insult.  On the day of the homicide, when a horse was levied on at the instance of deceased as the property of appellant, appellant called to his son, "Saddle me a horse and give me my old shotgun, and I will go up there and settle with the old gray headed s—n of a b—h."  When he gets to town he goes in Mr. Mallory's office, and, among other things, says to Mr. Mallory, when talking about the levy on the horse, "I can tell you what I am going to do— I am going to kill the old s—n of a b—h or he is going to kill me." This is but a short time before the fatal encounter.  The State's case is, appellant, after this, went in front of the store of deceased and cursed and abused him, calling deceased a s—n of a b—h several times, and many other opprobrious epithets.  Now, if appellant knew deceased bore the name of Fighting Jim Vickery; that deceased had a shooting scrape with 'Lias Vickery; had fought and cut Henry McDaniel; that he had shot a negro; that he had cut Lam Gulley and knocked him down with a chair, and had beat up Rich Hilly and Bill Wilson; that he had beat up Frank Parry and his folks, and had beat up and cuffed around a lot of negroes, and had carried one negro off in the woods who had never been heard of again, what could and would he reasonably expect to happen if he goes to such a man's place of business and begins cursing him?  Appellant testifies he knew all these circumstances to be facts, and knew of them before the difficulty, and

yet with the knowledge, according to the State's case, he goes to deceased's place of business and begins to dispute his account, and curses and abuses deceased, calling him a s——n of a b——h, and if, as he contends, deceased started towards him with an open knife, saying he would kill him, would not ordinary common sense have taught that deceased would resent his acts and conduct? Such a state of facts authorizes the submission of the issue of provoking the difficulty to the jury under the rule of law as laid down in both the McCandless and Grayson cases, supra, cited by appellant, and there was no error in the court submitting the issue. For other authorities so holding see Tardy v. State, 47 Texas Crim. Rep., 444; Coleman v. State, 49 Texas Crim. Rep., 357; Sanders v. State, 83 S. W. Rep., 712; Bateson v. State, 46 Texas Crim. Rep., 34; Coleman v. State, 25 S. W. Rep., 772; Barstado v. State, 48 Texas Crim. Rep., 255; McGrew v. State, 49 S. W. Rep., 228; Winters v. State, 51 S. W. Rep., 1110; Gaines v. State, 58 Texas Crim. Rep., 631, 127 S. W. Rep., 181.

Appellant apparently concedes that if the issue of provoking the difficulty is in the case and should have been submitted to the jury, the court correctly presented the law and under what circumstances he would be guilty of murder, but contends he incorrectly presented the law as to the circumstances under which he would be guilty of manslaughter, and when his right of self-defense would not be abridged; that the two paragraphs are conflicting, being based upon virtually the same state of facts. He contends that in paragraph 17 of the charge, that under the given state of facts, the court instructs the jury appellant would be guilty of manslaughter, while in paragraph 18 he instructs the jury he should be acquitted. That under such circumstances the charge is confusing and misleading, and, therefore, erroneous. We do not think the two paragraphes of the charge subject to such construction. In paragraph 17, in instructing the jury as to when appellant would be guilty of manslaughter, if he intentionally provoked the difficulty, the court began the paragraph with the following language: "If you find from the evidence that on the occasion of the homicide the defendant by words and acts intended by him, and reasonably calculated, to provoke a contest or difficulty with the deceased, did provoke the deceased to assault him," etc., he would be guilty of manslaughter, while in paragraph 18 he instructed the jury: "If you find from the evidence that the defendant did not on the occasion in question employ words or conduct intended by him nor reasonably calculated to provoke a difficulty with the deceased, or if you have a reasonable doubt as to whether he did so, or if you find that the defendant on said occasion did employ such words or conduct toward the deceased, but if you find that he did not intend thereby to provoke the deceased into a contest or difficulty in which he, defendant, intended to inflict injury upon him, or if you have a reasonable doubt as to whether the defendant did so, then in either event the defendant's right of self-defense, if any, would not be abridged or cut off by his use of such words or conduct towards deceased, if any; and if you find that the

defendant in killing the deceased acted in his self-defense under the law of justifiable homicide as hereinbefore given you in charge, or if you have a reasonable doubt as to whether he did so, you will acquit the defendant."

It will be noticed that in paragraph 17 the court requires the jury to find that appellant *by his words, acts and conduct intended to provoke a difficulty,* before the jury would be authorized to find him guilty of manslaughter. The charge instead of being conflicting correctly draws the line of demarcation as to when one would be guilty of manslaughter and when one would be justifiable in a case where the issue of provoking a difficulty is in the case. If he did not provoke the difficulty, the facts would show him to be justifiable in his acts, and he should be acquitted. If *he intentionally did acts which he knew would bring on a difficulty,* under the same state of facts he would be guilty of manslaughter. This, instead of being conflicting, we think the charge makes plain, and is a correct enunciation of the law. Mr. Branch, in his work on Criminal Law, correctly states the rule, citing the authorities:

"If defendant provoked the difficulty with no intent to kill the deceased, or to inflict serious bodily injury upon him, and thereby brought about the necessity of killing the deceased to save his own life, or to prevent serious bodily injury being inflicted upon him by deceased, it would be manslaughter. Jones v. State, 17 Texas Crim. App., 602; Thuston v. State, 21 Texas Crim. App., 248, 17 S. W. Rep., 474; Carter v. State, 37 Texas Crim. Rep., 406, 35 S. W. Rep., 378; Young v. State, 41 Texas Crim. Rep., 442, 55 S. W. Rep., 331; Beard v. State, 47 Texas Crim. Rep., 41, 81 S. W. Rep., 33; Lahue v. State, 51 Texas Crim. Rep., 163, 101 S. W. Rep., 1008; Keeton v. State, 128 S. W. Rep., 404; Green v. State, 12 Texas Crim. App., 449; Cahn v. State, 27 Texas Crim. App., 709, 11 S. W. Rep., 723; Bice v. State, 55 Texas Crim. Rep., 529, 117 S. W. Rep., 163; Carter v. State, 28 Texas Crim. App., 55, 13 S. W. Rep., 147.

"If defendant provoked the difficulty with no intent to kill, the killing in self-defense would be manslaughter. Casey v. State, 50 Texas Crim. Rep., 392, 97 S. W. Rep., 496; Parnell v. State, 50 Texas Crim. Rep., 419, 98 S. W. Rep., 269; Sanders v. State, 50 Texas Crim. Rep., 430, 97 S. W. Rep., 1046; Tollett v. State, 55 S. W. Rep., 573; Pedro v. State, 48 Texas Crim. Rep., 406, 88 S. W. Rep., 233; Brownlee v. State, 48 Texas Crim. Rep., 412, 87 S. W. Rep., 1153; White v. State, 23 Texas Crim. App., 154, 3 S. W. Rep., 710; King v. State, 13 Texas Crim. App., 277; Cunningham v. State, 17 Texas Crim. App., 87; Varnell v. State, 26 Texas Crim. App., 56, 9 S. W. Rep., 65; Arrellano v. State, 24 Texas Crim. App., 43, 5 S. W. Rep., 526."

The next contention appellant urges most strenuously is that the court erred in permitting the State, on cross-examination of appellant's wife, to ask her if on the day of the homicide and shortly thereafter she did not tell Isom Vickery, "Isom, Ira killed your papa, and he killed him because he sued him. I done everything I could to keep

him from doing it." And when she denied making this statement, in permitting Isom Vickery and his wife to testify that Mrs. McDugal did so state to them. In approving the bill the court states, and his qualification is supported by the statement of facts:

"Upon the trial of this case defendant introduced his wife as a witness. On direct examination she testified, substantially, that she witnessed the killing of deceased by defendant and heard and saw what transpired between them on that occasion; that during a period of several minutes next before the killing the deceased, holding an open knife in his hand, and standing on the gallery of his store (while defendant was on the ground at different distances from the gallery), violently cursed and abused defendant, threatened to kill him, started into the store after a gun (at which time defendant caused him to desist from doing so by pointing his gun at him and telling him not to go into the house and get his gun), and then called defendant a 'God damn black son of a bitch' and started toward defendant with the knife 'just like he was going to jump on him,' and that then and because of this defendant shot and killed deceased. On cross-examination she testified, substantially, that just before the killing deceased said to defendant, 'You ain't got nerve enough to shoot me, I will kill you, you God damn black son of a bitch,' and that defendant 'then loaded his gun'; that then defendant said to deceased, 'Cousin Jimmy, there ain't any use in our having any trouble, come on out here and settle with my wife if you can't settle with me'; that then the deceased started toward defendant with an open knife in his hand, cursed him, called him a 'God damn black son of a bitch,' and said, 'I will cut your God damn throat,' and then started to the defendant with the open knife in his (deceased's) hand, and that then and because of this the defendant shot and killed the deceased. Mrs. McDugal further testified on cross-examination that during the altercation and a few minutes before the shooting defendant came to his wagon (in which witness was sitting), situated near the place of the homicide, and got from the wagon his shotgun and a loaded shell; that witness did not try to keep him from getting the gun or the shell, and did not ask defendant to desist from shooting deceased.

"Mrs. McDugal further testified on cross-examination that about half an hour after the killing she started to her home, about four miles distant, and traveled all the way in a public road, riding in a wagon with her son. She was then asked on cross-examination whether, while going home, she met Isom Vickery and his wife in the road traveling in a vehicle, to which question she answered that she did not remember. She was then further asked on cross-examination whether upon meeting Isom Vickery and his wife in the road while she was going home, Isom Vickery asked her who killed his father, and whether she then replied to him by saying, 'Isom, Ira killed your papa; he shot him because he sued him,' to which question she answered no, that she did not remember making any such statement to Isom Vickery.

"In rebuttal of Mrs. McDugal's said testimony Isom Vickery and

also his wife were permitted to and did testify, over defendant's objection as shown in the bill, that they, traveling in a vehicle, met Mrs. McDugal, traveling in a wagon and going home, soon after the killing, and that Mrs. McDugal in answer to Isom Vickery's question. then said to him, 'Isom, Ira killed your papa, and he killed him because he sued him, and I done everything I could to keep him from doing it.'

"This testimony of Isom Vickery and his wife was deemed admissible as tending to contradict and impeach the aforesaid testimony of Mrs. McDugal."

Appellant contends that the State is not entitled· to go into new matter on the cross-examination of the wife; that she can be cross-examined only as to such matters as naturally spring out of and appertain to her direct examination; that she can not be cross-examined in a manner to get her opinion of defendant's guilt and what caused him to kill the deceased, and that her conclusions and opinion as to his guilt are inadmissible, and he cites a great many authorities in support of such contentions, but as we agree that the propositions of law stated by him are correct, we see no necessity to discuss them. In his brief he quotes only from Hobbs v. State, 53 Texas Crim. Rep., 71, 112 S. W. Rep., 308. We agree to the rule of law as stated in that case, and in it it is held: "The cross-examination must be confined to the matter elicited by the direct examination. This is the settled rule. The State could have examined Mrs. Bluman fully as to the trunks, their contents, when they were placed in the store, etc.; *and if she had made other statements regarding these things, this could have been shown."* This is all the State was permitted· to show in this instance—that Mrs. McDugal had made statements to Isom Vickery and his wife which directly contradicted the testimony she gave on the trial at the instance of appellant. The authorities are collated in Johnson v. State, 72 Texas Crim. Rep., 387, 162 S. W. Rep., 512; Taylor v. State, 74 Texas Crim. Rep., 3, 167 S. W. Rep., 56; Roberts v. State, 74 Texas Crim. Rep., 294, 168 S. W. Rep., 98. The court in his charge properly limited this testimony, instructing the jury: "If you shall find that the wife of the defendant, shortly after the killing, made the statement testified by Isom Vickery and Mrs. Isom Vickery, or either of them, to the effect that the defendant killed the deceased because of a suit, then such statement, if any, can not be considered by the jury as testimony against the defendant, but it can be considered by the jury only in so far as it may tend to affect the credibility of the defendant's wife as a witness and the weight to be given her testimony, of such statement would tend to affect her credibility or the weight of her testimony, and it can not be considered for any other purpose."

The defendant's wife, when he places her on the stand as a witness, may be impeached by showing that she had made contradictory statements the same as any other witness as to matters she testifies to on direct examination at his instance.

The next matter presented in the brief is that the court erred in permitting a number of witnesses to testify that they had known de-

ceased a number of years intimately, and that they had never known him to curse, and had never heard him use the words "son of a bitch." All the witnesses testified that when appellant went up to the store of deceased someone cursed, and someone called the other a son of a bitch, two or three different times during the altercation. The State's witnesses say it was appellant doing this cursing; the defendant and his witnesses say it was deceased cursing appellant. A sharp issue is drawn by this conflicting testimony. Appellant also testified that deceased had cursed him and called him a s—n of a b—h, when on the way to the depot, when no one else was present. Would the fact that deceased's intimate acquaintances, who had known him for years, testify that deceased was not a man who cursed and was not a man who used the epithets of the character and kind used on this occasion, be of any aid to the jury in determining who was cursing on that occasion? Appellant attacked the reputation of deceased as a peaceable, law-abiding citizen. Appellant himself testified to facts tending to show deceased was a man of bad reputation and had engaged in many fights, and said deceased had cursed and abused him at a time when no one else was present. Under the circumstances we think it was permissible for the State to show by the intimate associates of deceased, who had known him for many years, that he was not a man who cursed, and they had never heard him use an oath. Appellant cites the cases of Bullock v. State, 73 Texas Crim. Rep., 419, 165 S. W. Rep., 200; Melton v. State, 83 S. W. Rep., 822; Gregory v. State, 94 S. W. Rep., 1041, and Keith v. State, 94 S. W. Rep., 1044, all of which hold that when the testimony of the defendant shows a specific state of facts, that evidence of general reputation can not be introduced to rebut such evidence. In the cases of Everett v. State, 24 S. W. Rep., 506, and Martin v. State, 70 S. W. Rep., 974, it is held that a deceased's general reputation in a certain state of case, even though not directly attacked, may be proven when necessary to rebut some testimony of defendant in that particular respect. But it appears those cases were overruled in Melton v. State, 83 S. W. Rep., 822. But the question here presented is not the same as presented in those cases. No question was asked of any of the witnesses as to deceased's general reputation, but they were asked as to specific facts within their personal knowledge—not what they had heard, nor general impression in the community. They were asked as to their acquaintance, their association with deceased, and then asked if they had ever heard him curse. This was testimony as to facts within their knowledge, and while perhaps it would not have much weight on the issue as to whether deceased swore and used the epithets testified to on this occasion, yet it would have some bearing, and we think under the circumstances in this case the testimony was admissible. Wharton on Homicide, sec. 273; Bearden v. State, 83 S. W. Rep., 808.

As to the charge on threats and the law applicable thereto, placing the burden on the defendant to show that threats had been made, the facts in this case call for no such charge. There is no testimony that

deceased prior to this difficulty had ever made any threats, nor did appellant claim that he had been informed that deceased had threatened his life. The only threats there is any evidence of, are the threats appellant says deceased made in the wordy altercation immediately preceding the fatal shooting. Under such circumstances no charge on threats was called for or required. It has always been the rule in this court that where there is no evidence of antecedent threats, it is not necessary to charge on threats made at the time of and during the fatal difficulty. Hancock v. State, 47 Texas Crim. Rep., 3; Dobbs v. State, 54 Texas Crim. Rep., 550; Davis v. State, 52 Texas Crim. Rep., 149. But a charge on threats was given presenting the issues more favorable to appellant than he was entitled to. And inasmuch as there is no evidence of communicated threats, and the only evidence of threats is the threats testified to by appellant as being made by deceased during the difficulty, it was not erroneous for the court to instruct the jury, if such threats were made, etc. If there was evidence of communicated threats, then such a charge would be erroneous, but where the only evidence of threats is in regard to threats testified to by appellant as being made direct to him, such a charge presents no error.

While there are many other questions presented in the motion for a new trial, yet the above are all the questions presented by appellant's counsel in the brief filed, and in the able oral argument in this court. We have carefully read each bill of exceptions in the record, and considered each ground in the motion for a new trial, and being of the opinion that none of them present error, we have discussed only those presented by appellant in the brief filed, while considering all of them.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

March 22, 1916.

HARPER, Judge.—Appellant has filed a motion for rehearing herein, wherein he presents but two propositions. His contention that the court erred in permitting the cross-examination of the wife, as stated in the original opinion, can not be sustained. The authorities he cites are not in point. The witnesses in those cases had not testified as to the facts immediately attendant upon the homicide, the way it arose and occurred, as did appellant's wife in this case, and she having so testified, statements made by her contradicting the testimony she gave on the trial could be proven. Had she not been called to testify to these facts, then appellant's contention would be sound, and the statements she made to Isom Vickery would not be admissible. But when she is called by appellant and he undertakes to prove by her that deceased was assaulting him with an open knife drawn, when he shot, she can be impeached on that testimony the same as any other witness by showing contradictory statements, made on the day of the homicide.

The next contention is that we were in error in holding that there

was no error in the charge on provoking the difficulty in presenting when he .would be guilty of manslaughter, and we must frankly admit that one portion of said paragraph escaped our attention until it was specifically called to the matter in the motion for rehearing. This paragraph as applicable to manslaughter reads:

"If you find from the evidence beyond a reasonable doubt that on the occasion of the homicide the defendant, by words or acts intended by him and reasonably calculated to provoke a contest or difficulty with the deceased, did provoke the deceased to assault him or to do some act evidencing an immediate intention to assault him with a knife, and that in a contest or difficulty thus brought about, if it was, the defendant shot and killed the deceased with a gun, and if you further so find that the defendant, when he provoked the deceased in such manner, if he did, intended then and thereby to provoke the deceased to assault. him or to do some act evidencing an immediate intention to assault. him, and that the defendant then further intended to kill the deceased or to inflict upon him serious bodily injury in the contest or difficulty thus provoked, if you find it was, . . . *or if you have a reasonable doubt as to whether the defendant intended to provoke the deceased into a contest or difficulty, or as to whether he employed words or acts toward deceased that were reasonably calculated to provoke a difficulty,* or if you have a reasonable doubt as to whether the defendant intended to kill the deceased or to inflict upon him serious bodily injury in any contest or difficulty provoked by defendant, if you find it was, then the defendant, while he can not claim that he did the killing in his self-defense, would be guilty of manslaughter."

The words we have italicized above is the language complained of. In some way in reading the first sentence italicized we incorrectly construed it as stating, "or if you have a reasonable doubt as to whether the defendant intended to provoke the deceased into a contest or difficulty *with the intention of killing him,* he would be guilty of manslaughter." But upon a careful perusal of the paragraph we find .it instructs the jury, if they have a reasonable doubt if appellant intended by his words and conduct to provoke the difficulty, his right of self-defense would be abridged, or if the jury had a reasonable doubt as to whether the appellant employed words or acts toward deceased that were reasonably calculated to provoke à difficulty, his right of self-defense would be abridged. *This is not the law, and we were in error* in holding that this paragraph of the charge was a correct exposition of the law as applicable to manslaughter. The charge as a whole, with the exception of the part italicized, is an admirable presentation of the law. If the jury under the facts had a reasonable doubt that appellant intended by his words and conduct to provoke a difficulty, or if the jury had a reasonable doubt that appellant employed words or acts toward ·deceased that were reasonably calculated to provoke a difficulty, his right of self-defense would not be abridged, and the jury should have been so instructed, instead of being told that under such circumstances he would be guilty of manslaughter.

On account of this error in the charge, the motion for a rehearing is granted, the affirmance is set aside, and the judgment is reversed and the cause remanded.

The law is, if one provoke a difficulty with no intent to kill, or to inflict serious bodily injury, and by his acts and conduct brought about the necessity of killing the deceased to save his own life, the person slaying his adversary would be guilty of manslaughter. (Bice v. State, 55 Texas Crim. Rep., 533; Lahue v. State, 51 Texas Crim. Rep., 163; Beard v. State, 47 Texas Crim. Rep., 41; Carter v. State, 37 Texas Crim. Rep., 406; Thuston v. State, 21 Texas Crim. App., 248.) Judge Hurt, in the latter case, aptly states the law as applicable to the facts in this case. The State's theory is that appellant went to the store of deceased, and by his acts and conduct brought on the difficulty. But even according to the State's evidence, appellant at this time was unarmed; so it can not be reasonably presumed he at that time intended to kill or inflict serious bodily injury, but intended no more than an assault and battery, if he intended to provoke a difficulty. He says deceased by his conduct led him to believe he was going to enter the store, and arm himself, and thinking his life was in danger he armed himself in defense of his person. That when he did so, deceased advanced on him with an open knife, and he, thinking his life was in danger, shot and killed deceased. This theory of appellant, raised by the testimony, was not presented in the charge, and if it had been we can not say the jury would not have found it true, and found him guilty of manslaughter instead of murder. Under the court's charge as given, the jury was only authorized to acquit or find appellant guilty of manslaughter, in the event they found he did not provoke the difficulty; if they found he provoked the difficulty, regardless of his intent in doing so, they were instructed by the court they must find him guilty of murder, and this they did, evidencing they believed appellant went to the store to provoke a difficulty. They were given no opportunity to pass on whether or not appellant had the intent to kill or inflict serious bodily injury in doing so, or whether he intended a mere fist fight or an ordinary assault at the time he committed the acts which led the jury to believe he intended to provoke deceased into a difficulty. The record is such that this issue should have been properly submitted to the jury, in order that they might determine whether or not appellant was guilty of murder or manslaughter. We might have an opinion on the facts, but this is the province of the jury under our law, under proper instructions.

*Reversed and remanded.*